LILLEHAUG, Justice
(dissenting).
As the majority acknowledges, the district court “contravened an unambiguous rule of criminal procedure” when it failed to advise Clarence Bruce Beaulieu of his constitutional rights before it revoked his probation and executed his prison sentence. In the aftermath of this error, the parties presented and argued three issues: (1) whether Beaulieu had a constitutional right “to be advised” by the district court of his Morrissey due process rights; (2) whether the district court’s plain error in failing to advise Beaulieu of his rights as required by Minn. R.Crim. P. 27.04 affected Beaulieu’s substantial rights; and (3) whether Beaulieu knowingly and voluntarily waived his Morrissey due process rights. Inexplicably, the majority decides only the first and second issues. The majority evades the third issue — whether there was knowing and voluntary waiver— with a footnote at the end of the opinion to the effect that Beaulieu’s brief did not assert an independent waiver claim.
*283 I will demonstrate, in considerable detail, that the allegation that Beaulieu failed to describe clearly and press the waiver issue strays far from reality. The court of appeals squarely decided the issue. We granted review on that very issue. Beau-lieu’s brief argued it. The State responded on the merits. And, from the first minute of oral argument, the waiver issue took center stage and never left the spotlight.
The majority should have reached the waiver issue, decided it, reversed the court of appeals, and remanded the case to the district court to do what it should have done in the first place: follow our Rules of Criminal Procedure.[1]
I.
In 2010, Beaulieu pleaded guilty to one count of burglary in the first degree. He was sentenced to 57 months in prison. But the district court stayed execution of Beaulieu’s sentence for 20 years and placed him on probation.
Two years later the State sought to revoke Beaulieu’s probation. Minnesota Rule of Criminal Procedure 27.04 requires that, at a probationer’s initial appearance, “the court must ... [t]ell the probationer” of his or her constitutional rights, including the right to a probation revocation hearing in which the State would have the burden to prove the alleged probation violation by clear and convincing evidence. Id., subd. 2(1). The court must also tell the probationer that, among other things, he or she has the right to see the State’s evidence, present evidence, subpoena witnesses, cross-examine witnesses, and present reasons why the alleged violation should not result in revocation. Id.
When Beaulieu made his first appearance, on August 10, 2012, the district court did not give the required advisory. When Beaulieu made his second appearance three days later to admit the violation, the district court did not give the required advisory. When Beaulieu made his third appearance and the district court revoked Beaulieu’s probation and executed the 57-month sentence, the district court did not give the required advisory. As the majority agrees, this was error.
Not only did the district court fail to tell Beaulieu of his rights at any of the three hearings, it did not make any finding that Beaulieu had knowingly and voluntarily waived his constitutional rights. Neither the prosecutor, nor defense counsel, nor Beaulieu himself asserted that Beaulieu knew his rights and had decided to waive them.
Beaulieu appealed the revocation of his probation and execution of his sentence. In an unpublished opinion, the court of appeals affirmed. We granted review.
II.
The concept is hardly new that a probationer must understand his or her constitutional rights, and either exercise those rights or waive them knowingly and voluntarily before a loss of liberty. As the U.S. Supreme Court made clear in Morrissey v. *284 Brewer, 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and Gagnon v. Scarpelli, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), a probationer charged with a probation violation and at risk of a loss of liberty is entitled to procedural due process. The minimum requirements of procedural due process include preliminary and final revocation hearings. Gagnon, 411 U.S. at 782, 93 S.Ct. 1756. The purpose of these hearings is to provide the parties an opportunity to present evidence on the issue of whether there was a probation violation and whether any mitigating circumstances exist. See Morrissey, 408 U.S. at 487-88, 92 S.Ct. 2593.
The importance of the constitutional right to procedural due process in probation revocation proceedings is demonstrated by the fact that, in the aftermath of Morrissey and Gagnon, we promulgated Minn. R.Crim. P. 27.04. Rule 27.04, subdivision 2(1), requires that the district court “[t]ell the probationer” of the probationer’s rights to: (1) counsel; (2) a revocation hearing at which the State must present clear and convincing evidence of a probation violation; (3) pre-hearing discovery; (4) subpoena and cross-examine witnesses; (5) present evidence; and (6) appeal any decision to revoke probation. Further, the rule allows the probationer to “present mitigating evidence or other reasons why the violation, if proved, should not result in revocation.” Id.
Of course, constitutional rights can be waived. “Waiver’ is the voluntary relinquishment of a known right.” State v. Jones, 772 N.W.2d 496, 504 (Minn.2009). “Whether a waiver of a constitutional right is valid depends ‘upon the particular facts and circumstances surrounding that case....’” State v. Worthy, 583 N.W.2d 270, 275-76 (Minn.1998) (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). It is black-letter law that “[t]here is a presumption against the waiver of constitutional rights.” Brookhart v. Janis, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); see also Illinois v. Allen, 397 U.S. 337, 343, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); State v. Finnegan, 784 N.W.2d 243, 247 (Minn.2010) (“The right may be waived.... But the court must indulge every reasonable presumption against the loss of constitutional rights.”). While the U.S. • Supreme Court has not spoken on how Momssey rights may be waived, the federal circuit courts have held that rights may be waived by fair implication. See, e.g., United States v. Correa-Torres, 326 F.3d 18, 23 (1st Cir. 2003) (no “particular mantra” or “magic words” are required for knowing and voluntary waivers of Morrissey rights).
III.
So, where is the evidence that overcomes the presumption that Beaulieu did not waive his constitutional rights? Which particular facts and circumstances show, by fair implication, that Beaulieu knew his rights and decided to relinquish them?
The record before us does not contain a single piece of direct or circumstantial evidence that Beaulieu knowingly and voluntarily waived his constitutional rights. We know that the district court did not tell Beaulieu of his rights, as it should have. We know that the prosecutor did nothing to secure a waiver. We know that defense counsel and Beaulieu said nothing on the record about his rights. The record fails to show anything that comes close to a waiver, much less one that was knowing and voluntary.
The circumstances here are remarkably similar to a case from the U.S. Court of Appeals for the First Circuit, United States v. Correar-Toires, 326 F.3d 18 (1st Cir.2003). As here, the First Circuit considered whether a probationer had waived *285 his right to a revocation hearing. Id. at 20. As here, the record did not reflect that the district court, the prosecutor, or the probationer’s counsel had advised the probationer of his rights. Id. at 24. As here, the record was silent on the probationer’s waiver. Id. at 23-24. As here, the district court did not make a specific finding regarding the probationer’s waiver. Id. As here, the exchanges between the district court and probationer’s counsel did little to clarify matters. Id. at 24.
As I conclude here, the First Circuit concluded that there was no evidence to show that the probationer had knowingly and voluntarily waived his rights. Id. at 23. The record failed to show that “someone had advised the [probationer] of his [procedural] rights” or “explained the effect of a decision not to exercise those rights.” Id. at 24. After all, “[o]ne cannot knowingly waive rights if one does not realize that they exist.” Id.
As in Correa-Torres, we simply do not know what, if anything, Beaulieu knew about his constitutional rights. As in Cor-read-Torres, the particular facts and circumstances do not show, affirmatively or even by fair implication, that Beaulieu waived his rights knowingly and voluntarily.
IV.
The court of appeals attempted to fill the factual void with a presumption: that because Beaulieu was represented by counsel, “the district court may assume that appellant was adequately informed of his rights” and must have waived them. State v. Beaulieu, No. A12-2192, 2013 WL 4779046, at *4 (Minn.App. Sept. 9, 2013).
In this case, that is hardly a safe presumption. At Beaulieu’s first appearance, his counsel said: “I have reviewed with him the allegations in the Petition.” But this statement does not fairly imply that Beaulieu knew his rights. Read fairly, the statement suggests that Beaulieu’s counsel reviewed with him the factual basis of the alleged probation violations — i.e., that Beaulieu failed to keep appointments, be truthful, comply with instructions, and complete a chemical dependency assessment. That is not enough to support a reasonable inference that Beaulieu’s counsel fully advised him of his constitutional rights and he then silently, but knowingly and voluntarily, waived them.
Granted, the court of appeals’ reliance on the presumption that attorneys properly advise their clients of their rights finds some support in our case law. We have stated that it is appropriate to presume that an individual, represented by counsel, is informed of his or her procedural rights. See, e.g., State v. Lorentz, 276 N.W.2d 37, 38 (Minn.1979); State v. Propotnik, 299 Minn. 56, 57, 216 N.W.2d 637, 638 (1974). Once, in Shackelford v. State, 312 Minn. 602, 253 N.W.2d 149, 149-50 (1977), we even applied this presumption in the guilty plea context. But Shackelford’s usefulness as precedent is limited because, in that case, defense counsel testified “that in fact he had advised petitioner of his rights prior to his plea.” Id. at 150. There is nothing like that here.
In any event, like the United States Court of Appeals for the First Circuit in Correa-Torres, I am not satisfied that Beaulieu knew that he had a right to a revocation hearing merely because he was represented by counsel. 326 F.3d at 24 (“[T]he record does not reflect ... that counsel reviewed [the probationer’s] rights with him.”). Instead, in the absence of other evidence, I would apply the presumption against the waiver of constitutional rights.
To summarize, whether there has been a knowing and voluntary waiver is deter *286 mined by an examination of the particular facts and circumstances. Here, the circumstances do not show, by fair implication, a knowing and voluntary waiver of Beaulieu’s constitutional rights.
V.
In a footnote, the majority says that the issue of whether Beaulieu waived his Morrissey rights was not made in a fashion sufficiently “independent” from his claim that he had a constitutional right to be advised of those rights. By declining to address whether Beaulieu knowingly and voluntarily waived his Morrissey rights, the majority wishes away the very issue on which we granted review.
In affirming Beaulieu’s probation revocation, the court of appeals squarely held that Beaulieu had waived his constitutional right to due process in probation revocation. The last sentence of the court of appeals’ decision on this issue states: “Therefore, appellant’s argument that he never validly waived his Gagnon or Mor-rissey rights is unavailing given the appointment of counsel and his opportunity to contest the revocation with the assistance of counsel.” State v. Beaulieu, No. A12-2192, 2013 WL 4779046, at *4 (Minn. App. Sept. 9, 2013) (Emphasis added.)
Beaulieu’s petition seeking review of the court of appeals’ decision presented the issue squarely. In our order granting review, we directed: “IT IS HEREBY ORDERED that the petition of Clarence Bruce Beaulieu for further review of the decision of the Court of Appeals be, and the same is, granted on the Morrissey-waiver issue. Review is denied as to all other issues.” (Emphasis added.)
That Beaulieu briefed the waiver issue is clear. In the Table of Contents to Beau-lieu’s brief, subpart C, Beaulieu asserted: “Mr. Beaulieu Was Not Informed of His Constitutional Rights and Did Not Validly Waive Those Rights Before He Admitted the Probation Violation.” Leaving no doubt, in subpart D, Beaulieu asserted: “A Waiver of Constitutional Rights Must Be Knowing and Voluntary and Counsel Cannot Waive Such Constitutional Rights on Behalf of a Probationer Without a Personal Acknowledgement of Such Rights.”
Beaulieu’s brief argued two alleged constitutional violations: (1) a failure to advise of rights; and (2) a failure to obtain a knowing and voluntary waiver of rights. As the brief made clear, there were two issues: “[T]he district court erred by not advising Mr. Beaulieu of his Morrissey rights. The next question is whether despite this failure, was there a valid waiver of these rights.” (Emphasis added.) Beaulieu’s brief went on to argue that any waiver of a constitutional right must be accurately, voluntarily, and intelligently made. On whether representation by counsel alone was enough for a waiver, Beaulieu’s brief cited the very case on which I rely in this dissent, Correar-Torres, and argued that the district court’s failure to obtain a knowing and voluntary waiver required reversal. In other words, Beau-lieu’s brief forcefully pressed the waiver issue the majority now chooses not to see.
Finally, the issue of waiver was presented at oral argument. In the first minute, Beaulieu’s counsel, the able Chief Appellate Public Defender, stated: “The issue before the Court in this case is whether Mr. Beaulieu’s due process rights were violated by the district court’s failure to advise him of his Momssey rights and obtain a knowing and voluntary waiver of those rights prior to accepting his admission to the probation violation.” (Emphasis added.) In other words, she made due process arguments based on: (1) the failure to advise and, alternatively, (2) the failure to obtain a waiver. The alternative issue was argued fully, with the justices
*287 posing several questions on the subject of whether the court could infer that Beau-lieu waived his rights simply due to his being represented by counsel.
Tellingly, the majority does not disagree that the issue of whether Beaulieu knowingly and voluntarily waived his Morrissey rights was decided by the court of appeals, that we granted review on it, and that it was argued orally. Instead, the majority insists that, when parsed, Beaulieu’s brief somehow failed to present the issue as “independent.” If Beaulieu’s brief truly sidestepped the issue decided by the court of appeals on which we granted review, it would be more than a little odd that such a glaring omission was not mentioned — by the State or by any justice — at oral argument.
There is sidestepping going on here, but it’s not in Beaulieu’s brief. By imagining that the most important issue in the case is not before it, the-majority fails to protect constitutional rights.
VI.
I respectfully dissent because, on this record, there is no evidence that Beaulieu knowingly and voluntarily waived his rights. I would reverse the court of appeals, vacate the probation revocation, and remand for a revocation hearing to be conducted in accordance with Minn. R.Crim. P. 27.04.[2]

. Because I conclude that the record does not show a knowing and voluntary waiver of Beaulieu's Morrissey rights, I need not- address the two issues the majority does reach: whether Beaulieu had a separate constitutional right "to be advised” by the district court of his right to a revocation hearing (Part I of the majority’s opinion) or whether his probation revocation must be reversed solely because of the district court’s plain error in failing to deliver the rights advisory required by Minn. R.Crim. P. 27.04 (Part II of the majority's opinion). The majority dismisses the subject of whether Beaulieu knowingly and voluntarily waived his Motrissey rights — what should have been Part III of the majority opinion — at the very end of the opinion, in footnote 7.

. When a term of probation is revoked following an invalid waiver of the right to a revocation hearing, the "preferred practice” is to reverse and remand for a new. revocation hearing. See Correa-Torres, 326 F.3d at 25; see also State v. Modtland, 695 N.W.2d 602, 608 (Minn.2005) (reversing and remanding for "a new hearing” on the district court's revocation of probation because it did not address whether the probation violation was intentional or inexcusable or whether the need for confinement outweighed the policies favoring probation).